CLIFTON GEORGE CO. v. GREAT SOUTHERN LIFE INS. CO. (No. 6862.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 17, 1923.)

1. Covenants ⊂⊃49—No restriction contrary to public policy and tending to restrain trade favored.

No restriction in a deed running contrary to public policy, and tending to restrain trade, is ever favored.

2. Covenants ⊂⊃49—Restriction against use of property for other than certain purposes not enforced to prevent use for school purposes.

A restriction in a deed against the use of the property for other than enumerated purposes will not be enforced to prevent the use thereof for public or private school purposes.

3. Appeal and error ⊂⊃1028—Error in rulings not considered, where no other judgment could have been entered under facts shown.

Where no other judgment could be entered under the facts shown, error, if any, in the court's rulings will not be considered on appeal.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by the Clifton George Company against the Great Southern Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

For opinion on former appeal, see 234 S. W. 705.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.
W. W. King and H. P. Drought, both of San Antonio, for appellee.

COBBS, J. This suit was brought, seeking a temporary injunction to restrain appellee from entering upon, ejecting, or interfering with it or its tenant, C. J. Lukin, in the use of certain property for school purposes in Alamo Heights, a suburb of San Antonio in which he was engaged in teaching. The appellee held the said property under a deed containing the following covenants:

"That said vendee, its successors and assigns, 1st will not use the above-described premises, nor allow the same to be used for business pursuits other than for offices, hotels, boarding houses, lodging houses or offices for insurance or other companies."

Appellant says in his brief:

"That this suit was brought for the sole purpose of testing said restriction; and defendant also alleged that the said restriction against business pursuits had never been violated or waived in said Alamo Heights and that it is necessary to enforce said restriction in order to maintain said subdivision as a residential district."

The case was submitted to the jury upon 11 issues, and upon the replies to these issues the judgment was rendered for appellee.

This is the second appeal to this court (see 234 S. W. 705), in which the judgment of the trial court awarding the temporary writ was in all things affirmed. That opinion practically settled all the issues in this case.

On the second trial of this case—

"it developed on the trial of this case on its merits that the Alamo Heights subdivision was originally owned by the Alamo Heights Company, a corporation, and that the Alamo Heights Company conveyed the property in controversy to the Equitable Life Insurance Company, the deed containing the restriction in question; and that the Equitable Life Insurance Company later conveyed the same property to the appellee by a deed containing the same restriction. That the Great Southern Life Insurance Company, beginning in 1917, leased the land and improvements in question to C. J. Lukin for four consecutive years. During the ownership of the subdivision by the Alamo Heights Company it sold lots in the subdivision without inserting in the conveyance the restriction in question, and it then sold approximately 700 lots, as well as other land, to the Clifton George Company, appellant, and made no restriction whatever in the conveyance similar to the restriction in question. The Clifton George Company then conveyed certain lots without putting the above restriction in the conveyance, and, in fact, the Alamo Heights Company had theretofore conveyed a large tract out of the subdivision to be used for the erection of a private school for profit, which is now the West Texas Military Academy, and also conveyed another large tract to the Alamo Heights school district, to be used for the erection of a public school.

"Immediately after Mr. Lukin went into possession of the property he erected, at a cost of about $1,800, a hollow-tile building on the property, containing classrooms. to be used in connection with his school, and during the erection of this building the president of the appellant company passed the place a number of times and saw the building being erected, and since that time the property in controversy has been continuously used as a military school for boys."

[1] No restriction in a deed that runs contrary to public policy and tends to restrain trade is ever favored.

An interesting discussion of a prohibition against selling lands to certain classes of citizens and aliens, contained in covenants of deeds, will be found in the case of Title Guarantee & Trust Co. v. Garrott, 42 Cal. App. 152, 183 Pac. 470, opinion by the Presiding Justice Finlayson, who in discussing the question said:

"If, as is held by the majority of the cases, supported by principle and reason, a condition is void that imposes a total restraint on the power of alienation for any time, ,however short, then why should not a condition be void that imposes any inhibition on alienation to persons, however few, or to classes of per-

247 S.W.—58

sons, however limited the classes may be? Upon what principle can a restraint partial as to persons and a restraint partial as to time be put upon different bases? In one case, as in the other, the rule that any limitation, however partial, voids the condition, is the more logical, and presents no difficulties such as necessarily must be encountered in determining whether the restriction be reasonable or otherwise. The right of alienation is an inherent and inseparable quality of an estate in fee simple. Potter v. Couch, 141 U. S. 315, 11 Sup. Ct. 1005, 35 L. Ed. 721. Therefore any and all restraints on alienation necessarily must tend to deprive the granted estate of an incident inseparably inherent in it, and necessarily must be repugnant to and inconsistent with the grant, and, as such, void.

" 'The general rule is that where a devise is made in fee, either of a legal or an equitable interest, all limitations tending to deprive the estate of any of the incidents appertaining to the interest created are held to be repugnant to the devise, and void. To transfer a fee, and at the same time to restrict the free alienation of it is to say that a party can give and not give, in the same breath.' Johnson v. Preston, 226 Ill. 447, 80 N. E. 1001, 10 L. R. A. (N. S.) 564.

"If the continuation of the estate in the grantee may be made to depend upon his not selling or leasing to persons of African, Chinese, or Japanese descent, it may be made to depend upon his not selling or leasing to persons of Caucasian descent, or to any but albinos from the heart of Africa, or blond Eskimos. It is impossible, on any known principle, to say that a condition not to sell to any of a very large class of persons, such as those embraced within the category of descendants from African, Chinese, or Japanese ancestors, shall not be deemed an unreasonable restraint upon alienation, but that the prescribed class may be so enlarged that finally the restriction becomes unreasonable and void. Where shall the dividing line be placed? What omniscience shall tell us when the restraint passes from reasonableness to unreasonableness? Who can know whether he has title to the land until the question of reasonableness has been passed upon by the court of last resort? No matter how large or how partial and infinitesimal the restraint may be, the principles of natural right, the reasons of public policy, and that principle of the common law which forbids restraints upon the disposition of one's own property, are as effectually overthrown by the one as by the other. The difference is of degree, not principle."

In the consideration of this case will be seen a comprehensive discussion of restraints in covenants with the citation of authorities that made it interesting reading on the general subject. No state has gone further in laws for the freedom of trade, the protection to commerce, and in the encouragement of industrial pursuits, and above all has Texas ever stood for the encouragement of education. Long ago, and in her Constitutions, has she made the greatest donations of her public domain to promote public education.

[2] Any law that would tend towards the restriction of buildings for religious worship or teaching, or restrain public or private schools for education, would be frowned down alike, for they walk hand in hand, the corner stones of our American institutions, and without which no government can stand. While there is here no restraint of the former class, we simply use the two as the basic symbols illustrative of our institutions.

It is education that fits our people for self-government. It is the educated American who shall stand for his government against socialism and destroy the hydra head of all the monsters that rise up against law, order, and constituted authority. We unhesitatingly hold that such restraint upon this property must be overthrown and invalidated.

[3] We find no merit in the propositions of law urged that the court erred in its several rulings, all of which we have considered and overrule because under the facts developed there could be no other judgment entered. Finding no error committed by the trial court in the disposition of the case, the judgment is affirmed.