Fred V. Meridith, Co. Atty., and Robert K. Ramsey, Asst. Co. Atty., both of Terrell, and Ernest S. Goens, State's Atty., of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of unlawfully carrying a pistol, and his punishment was assessed at confinement in the county jail for a period of six months.

Appellant seriously contends that the evidence is insufficient to justify and sustain his conviction. With this contention we are inclined to agree. The record discloses that appellant was running a grocery and restaurant business in the town of Terrell in Kaufman County; that on the night in question he closed his place of business about 9:30 p.m., and started home in his automobile. During the day he had collected approximately $100 which he put in his pocket. As he started to go home, he put a pistol in his belt. About the time that he had gotten into his automobile, the officers appeared on the scene. They pulled him out of his car, searched him and found a pistol on his person. At the time they pulled him out of his automobile, he said he was going home.

Appellant testified that the pistol had been in his place of business for about six months; that he had not been in the habit of carrying it from his place of business to his home or from his home to his place of business. This is not controverted by any fact or circumstance. Appellant had a right to carry a pistol from his place of business to his home, just as much so as if he had carried it from a repair shop or from a pawnbroker shop to his home, so long as he did not do it habitually. This case is parallel to that of Bowles v. State, 66 Tex.Cr.R. 550, 147 S. W. 869. The evidence in this case is very similar to that adduced on the trial of that case. Upon the authority of that case, we think this case should be reversed and remanded. See also Kellum v. State, 66 Tex.Cr.R. 505, 147 S.W. 870; Mathonican v. State, 51 Tex.Cr.R. 471, 102 S.W. 1123; Huff v. State, 51 Tex.Cr.R. 441, 102 S.W. 407.

Many other complaints are brought forward relating to the admission of extraneous misdemeanor cases which are not relevant to the case on trial, but in view of the disposition we are making of this case, we deem it unnecessary to discuss the same at length.

It occurs to us that the County Attorney failed to distinguish the difference between evidence which tends to affect the credibility of the accused as a witness and that which shows his general reputation. The charge of the court complained of singles out appellant's testimony and is a comment on the weight thereof.

From what we have said it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

CANNON et al. v. FERGUSON et al.

No. 14732.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 30, 1945.

Rawlings, Sayers & Scurlock and Nelson Scurlock, all of Fort Worth, for appellants.

Culbertson, Morgan, Christopher & Bailey and A. B. Culbertson, all of Fort Worth, for appellees.

McDONALD, Chief Justice.

This suit was brought by three owners of lots in the area hereinafter referred to for the purpose of preventing the erection of a church building on certain other lots in the area on the ground that the building of the church would constitute a violation of building restrictions allegedly in force in the area.

In the south part of the City of Fort Worth are two additions named, respectively, Frisco Railroad Addition and Frisco Heights Addition. The record does not show when such additions were subdivided, but obviously they were subdivided and the lots here involved were sold to various persons before the time of the execution of the restriction agreement herein described. Each of said additions runs a distance of two blocks north and south, and several blocks east and west. The two additions adjoin each other, Frisco Railroad Addition lying to the north, and Frisco Heights Addition to the south. The two additions, therefore, run an aggregate distance of four blocks north and south.

In the year 1930 there was an attempt on the part of owners of some of the lots facing on Forest Park Boulevard, one of the north-south streets in said additions, to create building restrictions applicable to the lots facing on such street. There were two drafts or copies of the agreement which the lot owners signed. About one-third of them signed one of the copies, and about two-thirds signed the other one. As may be observed from a reading of the agreement, neither of the copies refers to the other one, but each appears on its face to be a complete agreement within itself. The two copies are alike, except as to lot and block numbers. Omitting the formal parts, and omitting the names of the signers and the descriptions of their several lots, the instruments each read as follows:

"In order to insure the development of Frisco Railroad and Frisco Heights Addition to the City of Fort Worth, Tarrant County, Texas, as a residential section of a desirable character, to assure uniformity and harmony in such development on that part of said Additions fronting on Forest Park Boulevard, and to carry out a general plan of development for the use and convenience of each and every owner of the Lots hereinafter described, the undersigned, who are the owners of the Lots set opposite their names in Frisco Railroad Addition and in Frisco Heights Addition to the City of Fort Worth, in consideration of the mutual promises of each other, hereby agree and covenant to observe the following restrictions as to the lot or lots which he owns or may own, or have an interest in:

"1. The lots shall be used for residential purposes only.

"2. The owner of any lot, his heirs, administrators, executors or assigns shall never sell, convey, or transfer any lot or

part thereof to any negro or negroes, or to any person of African descent. But this provision shall not be construed to prohibit the erection and use of such servant house or houses as shall be desirable in connection with the use of any residence erected for white persons.

"3. No house shall be erected which costs less than $4,500.00, and which is not of brick, brick veneer, or stucco, or stone construction. Each of the undersigned further covenant and agree that when he sells or conveys a lot or lots to any person whomsoever, he will include in his Deed of conveyance the restrictions herein set forth and provide further that such restrictions shall be construed as a covenant running with the land, and that a violation thereof shall entitle the Vendor to reenter the property so conveyed and take possession thereof."

Following the body of the agreement appear what purport to be the names of the signers, set opposite each of which is the lot and block number of the lot purported to be owned by each signer.

The two documents were recorded in the Deed Records of Tarrant County on December 2, 1930.

As has been indicated, Forest Park Boulevard runs a distance, north and south, of two blocks through Frisco Railroad Addition and two blocks through Frisco Heights Addition. In the northermost block the owners of all but five of the lots facing Forest Park Boulevard signed the restriction agreement. In the next block south the owners of all but two lots signed the agreement. In the third block, proceeding south, all of the owners signed, and in the fourth or southermost block none of the owners signed the agreement. There are a total of eighty lots facing Forest Park Boulevard. The owners of sixty signed the agreement, the owners of twenty did not. With the exception of a single lot facing on another street, no lots elsewhere in the additions were included in the agreement.

The two northermost lots on the west side of Forest Park Boulevard were not included in the agreement, nor were the three northermost lots on the east side of the street. The University Baptist Church has acquired the six northermost lots on the east side of Forest Park Boulevard, as well as other lots in the addition which are not restricted, and intends to build an auditorium and other church buildings on said lots. The three northermost lots, which are admittedly unrestricted, are lots Numbers 18, 19 and 20 in Block 7 of Frisco Railroad Addition. The next three lots to the south are lots Numbers 15, 16 and 17. The latter three are included in the restriction agreement. The plaintiffs are severally the owners of three lots lying to the south in the same block and on the same side of the street, to-wit, Numbers 11, 13 and 14.

Plaintiffs seek to prevent the erection of the proposed church buildings on lots 15, 16 and 17, but not on the other lots owned by the Church.

Plaintiffs were denied any relief in the court below in a non-jury trial, and have appealed.

Appellees, being the Church and certain named officials of the Church, first contend that plaintiffs cannot enforce the restrictions as against appellees because there is no privity of estate between them as to their respective lots. They contend that restrictions such as these could be created only in a conveyance of title, as in the case of restrictions contained in the deeds of one who subdivides and sells land. We overrule this contention. As was held in the early case of Trustees of Columbia College v. Lynch, 70 N.Y. 440, 26 Am.Rep. 615, and often since, 14 American Jurisprudence 611, owners of property may by mutual covenant, apart from a conveyance, create enforceable restrictions as to the use of their property. As was said in the Lynch case, where adjoining property owners entered into an agreement restricting the use of their respective properties:

"There was no privity of estate, or community of interest between the parties, but each could, by grant, create an easement in his own lands for the benefit of the lands owned by the other, and the purpose of the agreement was to create mutual easements, negative in their character, for the benefit of the lands of each."

Appellees also say that the restrictive agreement, if it was intended to forbid the building of a church on any of the lots covered by the agreement, was unenforceable because against public policy. In support of their contention appellees cite Clifton George Co. v. Great Southwestern Life Insurance Co., Tex.Civ.App., 247 S.W. 912, 914. There an effort was made to

enjoin the operation of a school in an allegedly restricted residential area. The opinion contains the following language:

"Any law that would tend towards the restriction of buildings for religious worship or teaching, or restrain public or private schools for education, would be frowned down alike, for they walk hand in hand, the corner stones of our American institutions, and without which no government can stand. While there is here no restraint of the former class, we simply use the two as the basic symbols illustrative of our institutions.

"It is education that fits our people for self-government. It is the educated American who shall stand for his government against socialism and destroy the hydra head of all the monsters that rise up against law, order, and constituted authority. We unhesitatingly hold that such restraint upon this property must be overthrown and invalidated."

The opinion cites no authority for the holding announced, and we have found no other case in which such a rule is announced. As may be seen from the cases cited in the annotations in 98 A.L.R. 390 and in 124 A.L.R. 448, it has been held a number of times by courts in other jurisdictions that the operation of a school may be prevented as being in violation of a restrictive covenant relating to the use of real property, although such restrictive covenants cannot defeat the right of eminent domain. Our laws do not accord to churches the right of eminent domain. The erection of a church has been enjoined because in violation of restrictive covenants in such cases as Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545; St. Andrew's Lutheran Church's Appeal, 67 Pa. 512; Cleveland Baptist Ass'n v. Scovil, 107 Ohio St. 67, 140 N.E. 647; and Renfroe v. Alden, 164 Ga. 77, 137 S.E. 831, 833. In the last cited case it is said:

"While undoubtedly it is true, as stated by counsel for defendants in error, that a church is a necessity in any community, still, as a legal proposition, a church is as much bound by valid restrictions upon property held by it as is any other association or person."

Clifton George Co. v. Great Southwestern Life Ins. Co., Tex.Civ.App., 247 S.W. 912, cited supra, did not reach the Supreme Court by way of application for writ of error, and is, we believe, against the current of authority. We respectfully decline to follow the rule there announced.

Appellees also contend that the contract signed by the lot owners created merely a covenant personal to the parties to the contract, and not the running with the land, because it was not a part of a general scheme to erect uniform restrictions throughout the two additions.

In view of the disposition being made of the case, it is not necessary to say more than that it was not essential that there be a general scheme of restricting all of the lots in the additions. Valid restrictions could result from a scheme to restrict the lots in only one block, or those facing on only one street. This brings us to a discussion of another reason urged by appellees against the enforceability of the restrictions.

To state the contention in the words of appellees' brief:

"The agreement for a neighborhood restriction was never carried out, but was abandoned by the original parties to the contract."

We believe that this contention is sustained by the evidence, and that upon such ground the judgment of the trial court should be affirmed. As has been said, eighty lots faced Forest Park Boulevard. The owners of sixty lots signed the agreement, the owners of twenty of the lots did not. The evidence offers no explanation for the failure of the owners of the twenty lots to sign, other than a rather vague suggestion to the effect that two, and possibly five, of the lots in the northernmost block were being used for business purposes at the time the restriction agreement was signed. For reasons already suggested, we attach no importance to the fact that owners of lots on other streets did not sign the agreement. From the form of the agreement as it is shown in the statement of facts, it appears that the names of the owners, in at least one of the two copies of the agreement, were not written into the body of the agreement, and the parties to the agreement may be identified only from their signatures. But it is clear from the body of the agreement that the original plan contemplated the creation of restrictions on all of the lots facing Forest Park Boulevard. There is no mention of any exceptions in the agreement. For reasons not disclosed by this record the owners of twenty-five per cent of the lots did not

join in the proposed plan. Applicable, therefore, is the rule as declared in Scull v. Eilenberg, 94 N.J.Eq. 759, 121 A. 788, 789:

"A neighborhood scheme of restrictions to be effective and enforceable must have certain characteristics. It must be universal; that is, the restrictions must apply to all lots of like character brought within the scheme. Unless it be universal it cannot be reciprocal. If it be not reciprocal, then it must as a neighborhood scheme fall, for the theory which sustains a scheme or plan of this character is that the restrictions are a benefit to all. The consideration to each lot owner for the imposition of the restriction upon his lot is that the same restrictions are imposed upon the lots of others similarly situated. If the restrictions upon all lots similarly located are not alike, or some lots are not subject to the restrictions while others are, then a burden would be carried by some owners without a corresponding benefit."

For similar views, see Foster v. Stewart, 134 Cal.App. 482, 25 P.2d 497; and Thornhill v. Herdt, Mo.App., 130 S.W.2d 175.

While they involve restrictions created by provisions in deeds from the common grantor, rather than by mutual agreement of separate property owners, the Texas decisions seem to reflect the same underlying philosophy. Hooper v. Lottman, Tex.Civ. App., 171 S.W. 270; Hill v. Trigg, Tex. Com.App., 286 S.W. 182; Curlee v. Walker, 112 Tex. 40, 244 S.W. 497.

While it might be thought that the owners in the northermost block would not be concerned with the failure of the owners in the southermost block to join in the restriction agreement, it is easy to see that the owners in the block next to the southermost block would be concerned by such failure, and that they well may have signed the agreement in the expectation that the owners on both sides of them would join in the plan to restrict the lots along the street, and that they would not have signed the agreement had they known that a fourth of the owners along the street would not do so. As slight evidence of the fact that the owners themselves may have realized the failure of the effort to restrict the addition, many of them conveyed their respective lots without including in their deeds the restrictive covenants which they had agreed to place in them. No such restrictions were incorporated in any of the deeds in the chain of title to the three lots acquired by appellees which are involved in this suit.

 There being no findings of fact by the trial court and no request for such, we are required to affirm the judgment if it can be done upon any theory having support in the pleadings and the evidence.

Judgment of the trial court affirmed.