**BAYWOOD ESTATES PROPERTY OWNERS ASSOCIATION, INC., Appellant**

v.

**Jack P. CAOLO, David and Candice Griffin, James Chumley, and Verne Beshear, Appellees.**

No. 12–12–00063–CV.

Court of Appeals of Texas, Tyler.

Sept. 28, 2012.

Rehearing Overruled Oct. 30, 2012.

John M. Gillis, Allen W. McClure, Dallas, for Baywood Estates Property Owners Association, Inc.

Jack P. Caolo, pro se.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Baywood Estates Property Owners Association, Inc. (the POA) appeals the summary judgment granted in favor of Jack P. Caolo, David and Candice Griffin, James Chumley, and Verne Beshear (Appellees). In a single issue, the POA argues for reversal of the summary judgment. We reverse and remand to the trial court for further proceedings.

### BACKGROUND

In May 1971, Southwest Resorts Company filed the Baywood Subdivision Plat and Restrictions in the Henderson County Deed Records. Lots 253 and 254 were set aside as a common area of the subdivision for a park and boat ramp on Cedar Creek Reservoir. Southwest began selling deeds to lots in the subdivision that included the following covenant:

Grantees herein do mutually agree and bind themselves with other present and future property owners of said BAYWOOD ESTATES, to an individual assessment of TEN and NO/100 ($10.00) Dollars per year for the maintenance of parks and ramp area in said Baywood Estates.

In the summer of 1974, with the assistance of Southwest, the POA was incorporated as a nonprofit corporation. Part of its stated purpose was to maintain the park and boat ramp area of the Baywood Estates Subdivision. Southwest then conveyed Lots 253 and 254 to the POA.

Since the summer of 1974, the POA has continuously maintained the park and boat ramp for the benefit of property owners in the subdivision. In November 2008, owners of four lots in the subdivision, Appellees, filed a declaratory judgment action against the POA alleging that the POA did not have the authority to collect assessments from them to maintain the park and boat ramp on Lots 253 and 254. The POA counterclaimed seeking judgment against Appellees for the past due assessments. Appellees filed two traditional motions for summary judgment and a no evidence motion for summary judgment asserting that the POA had no authority to govern or collect assessments to maintain the park and boat ramp. The POA filed a traditional motion for summary judgment and two motions for no evidence summary judgment regarding the same issues, and seeking judgment on its counterclaim. On January 30, 2012, over thirty-nine months after the suit was filed, the trial court signed a summary judgment that included the following five paragraphs:

1. Defendant Baywood Estates Property Owners Association, Inc. is not a mandatory membership property owners association and does not have any power or authority to govern the Baywood Estates Subdivision in Henderson County, Texas, including the Baywood Estates Subdivision Park and boat ramp.

2. Defendant Baywood Estates Property Owners Association, Inc. does not have the right or authority to enforce payment of any dues, or the $10.00 assessment mentioned in deeds to property in Baywood Estates Subdivision, and does not have authority to do anything with the Park and ramp that would keep it from being used as a park and ramp.

3. All Baywood Estates Subdivision property owners have a right to use the Baywood Park and boat ramp regardless of whether they pay anything for Park and ramp maintenance, or dues to defendant Baywood Estates Property Owners Association, Inc., which has no right or authority to exclude Baywood Estates Subdivision property owners from using the Park and ramp and the

Declaration of Restrictions regarding the Park and ramp, filed in the Henderson County deed records on September 15, 2009, are null and void to the extent they state anything to the contrary or have any contrary effect.

4. Defendant Baywood Estates Property Owners Association, Inc., is a voluntary membership association made up of those Baywood Estates Subdivision owners who wish to join. Subdivision property owners can pay any amount they wish for upkeep of the Park and ramp, and if they do not want to pay anything they do not have to do so.

5. Defendant Baywood Estates Property Owners Association, Inc. has a right to maintain the Park and post signs for the use of the Park and boat ramp exclusively by the owners of property in the Baywood Estates Subdivision.

Following the entry of this summary judgment, the POA timely filed its appeal.

### Standard of Review

■ Declaratory judgments rendered by summary judgment are reviewed under the same standards as govern summary judgments generally. *Hourani v. Katzen,* 305 S.W.3d 239, 248 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). We review a trial court's granting of a summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). A summary judgment under rule of civil procedure 166a(c) is properly granted only when a movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Hourani,* 305 S.W.3d at 248. Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979).

A no evidence summary judgment motion under Rule 166a(i) is essentially a motion for a pretrial directed verdict, which may be supported by evidence. *Timpte Indus., Inc. v. Gish,* 286 S.W.3d 306, 310 (Tex.2009). It requires the nonmoving party to present evidence raising a genuine issue of material fact supporting each element contested in the motion. Tex. R. Civ. P. 166a(i); *Gish,* 286 S.W.3d at 310. Review of a summary judgment under either a traditional standard or no evidence standard requires that the evidence presented by both the motion and the response be viewed in the light most favorable to the party against whom the motion was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *Gish,* 286 S.W.3d at 310; *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002).

■ When, as here, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, courts of appeals should consider all summary judgment grounds ruled on by the trial court and preserved for appellate review that are necessary for final disposition of the appeal. *Tiner v. Tex. Dep't of Transp.,* 294 S.W.3d 390, 393 (Tex.App.-Tyler 2009, no pet.).

## ISSUE PRESENTED

In its sole issue, the POA contends the trial court erred in granting Appellees' motions for summary judgment, denying the POA's motions for summary judgment, and declaring that (1) it does not have power or authority to govern the subdivision's park and boat ramp; (2) it does not have the right or authority to enforce payment of any assessments; (3) all subdivision property owners have a right to use the park and boat ramp without paying maintenance assessments to the POA; and (4) it is optional for subdivision property owners to pay any assessments for the maintenance of the park and boat ramp.

In their first motion for partial summary judgment, Appellees asserted that the POA has no authority to represent the property owners of Baywood Estates, to maintain roads, lots or the park and boat ramp area, to impose monetary assessments, or to operate as a property owners association in any manner. They argue that the POA did not derive authority from the developer, Southwest, the plat, or property restrictions drafted by Southwest. They argue that the plat dedicated streets and easements, including the park and ramp area, to the public and public agencies have accepted the dedication. Therefore, those interests are owned by the public and Baywood property owners. Included among the exhibits supporting the motion are the 1971 deed to Southwest from Mitchell Development, the plat of Baywood Estates, the property restrictions that describe utility easements, and the 1974 deed from Southwest to the POA for the two lots containing the park and boat ramp.

In their second motion for partial summary judgment, Appellees asserted that the POA has no authority because it was not created in compliance with law and is merely a voluntary association. Further, they argued that the plat created an easement in the park in favor of all Baywood property owners, and the purchase of lots by the public constituted acceptance of the dedication of the park. Supporting exhibits include the plat, the property restrictions, and a 1977 deed that includes the Grantees' agreement to bind themselves to a yearly assessment for the maintenance of the park and ramp area. In their motion for no evidence summary judgment, Appellees contended that there is no evidence to support the POA's counterclaims. Specifically, they argue, there is no evidence of an enforceable agreement to pay assessments and no evidence that the POA has the authority to collect assessments.

## THE PLAT AND PROPERTY RESTRICTIONS

Dedication is the setting apart of land by the owner for some public use together with the actual or implied acceptance of the land for that use by or on behalf of the public. *Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 813 (Tex.App.-Dallas 2007, pet. denied). The elements of dedication are (1) intention to dedicate, (2) manifestation and communication of intention to dedicate, and (3) acceptance of the dedication. *Id.* The owner's intent to dedicate to public use must be clearly shown. *Owens v. Hockett,* 151 Tex. 503, 251 S.W.2d 957, 958 (1952). The intent of the one giving the dedication must be clear and unambiguous; no intent to dedicate will be presumed. *Mitchell v. Rancho Viejo, Inc.,* 736 S.W.2d 757, 761 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.). Intent to dedicate is a question of fact for the trier of fact. *Viscardi v. Pajestka,* 576 S.W.2d 16, 19 (Tex. 1978).

The "Owners Certificate" filed with the plat states that Southwest "does hereby dedicate to public use forever, the streets, roads, alleys and easements as shown" on

the plat. The plat indicates the location of streets and utility easements. The lots are numbered and Lot 253 is labeled "Park Area." The plat was approved by the commissioners' court on May 3, 1971. A document entitled "Baywood Estates Property Restrictions" was filed on May 4, 1971. That document sets out building restrictions and references utility easements but does not mention the park or boat ramp. We cannot presume that Southwest considered the park to be included in the term "easement." *Mitchell*, 736 S.W.2d at 761. Accordingly, Appellees did not prove as a matter of law that Southwest intended to dedicate the park to the public. Appellees' argument that the POA has no authority over the park because the plat and property restrictions indicate that the public and property owners own the park is not a valid one.

## THE DEEDS

Appellees assert that, to acquire authority, an association must be created in compliance with the law. They contend that the deeds from the developer do not express a plan to form a mandatory property owners association that would collect an assessment to maintain the park area. Therefore, the argument continues, the POA did not acquire authority through the Baywood Estates deeds.

### Covenants Running with the Land

■■■■ A restrictive covenant is a contractual agreement between the seller and the purchaser of real property. *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex.App.-Houston [1st Dist.] 2008, no pet.). A property owner may subdivide property into lots and create a subdivision in which all property owners agree to the same or similar restrictive covenants designed to further the owner's general plan or scheme of development. *Id.* A covenant runs with the land

when it touches and concerns the land; relates to a thing in existence or specifically binds the parties and their assigns; is intended by the original parties to run with the land; and when the successor to the burden has notice. *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 394–95 (Tex.App.-Texarkana 1999, pet. denied). Neighborhood and subdivision developers in Texas have been using covenants that run with the land as described in the seminal 1914 case of *Hooper v. Lottman*, 171 S.W. 270 (Tex.Civ. App.-El Paso 1914, no writ), which states as follows:

> [T]he general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase.

*Id.* at 272. Our supreme court first approved this use of restrictive covenants for real estate development in *Curlee v. Walker*, 112 Tex. 40, 244 S.W. 497, 498 (1922).

See also *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex.1990) (describing *Hooper v. Lottman* as the leading Texas case in restrictive covenants used in real estate development).

Where an owner of a tract subdivides and sells the subdivided parcels to separate grantees, imposing restrictions on the use of each parcel pursuant to a general plan or scheme of development, each grantee may enforce the restrictions against each other grantee. *Ski Masters of Tex., LLC,* 269 S.W.3d at 669. A neighborhood scheme of restrictions, to be effective and enforceable, must apply to all lots of like character within the subdivision. *See Cannon v. Ferguson,* 190 S.W.2d 831, 835 (Tex.Civ.App.-Fort Worth 1945, no writ). The theory which sustains a scheme or plan of this character is that the restrictions are a benefit to all. *Id.* If the restrictions upon all lots similarly located are not alike, or some lots are not subject to the restrictions while others are, then a burden would be carried by some owners without a corresponding benefit. *Id.*

We review a trial court's interpretation of a restrictive covenant de novo. *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.,* 133 S.W.3d 294, 297 (Tex.App.-Fort Worth 2004, pet. denied). Applying general rules of contract construction, we liberally construe a restrictive covenant to give effect to its purposes and intent. TEX. PROP. CODE ANN. § 202.003(a) (West 2007); *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). We must give a restrictive covenant's words and phrases their commonly accepted meaning. *Uptegraph v. Sandalwood Civic Club,* 312 S.W.3d 918, 925 (Tex.App.-Houston [1st Dist.] 2010, no pet.). Covenants are examined as a whole in light of the circumstances present when the parties entered into the agreement. *Ski Masters of Tex., LLC,* 269 S.W.3d at 667.

### General Scheme or Plan of Development

The POA contends the trial court erroneously determined that it did not have the power or authority to govern the park and boat ramp, to enforce payment of any assessments to maintain the park or boat ramp, or to exclude any lot owners from using the park and boat ramp. Appellees contend that, when Southwest began selling lots in the subdivision in 1971, it did not have a scheme or plan of development to form or empower the POA. It alleges that not all the deeds executed by Southwest contained the restrictive covenant for the payment of the annual assessment for the maintenance of the park and boat ramp.

A general plan or scheme of development can be established by (1) express covenant; (2) by implication from the filed map; (3) parol representations made in sales brochures, maps, advertising, and oral statements on which a purchaser relied in making his purchase; (4) reciprocal covenants in all deeds out of the common developer; or (5) the developer pursuing a course of conduct indicating a neighborhood scheme. *Lehmann v. Wallace,* 510 S.W.2d 675, 680 (Tex.Civ.App.-San Antonio 1974, writ ref'd n.r.e.). Once an association shows that a plan or scheme exists for the benefit of all lot owners, it has shown a right to enforcement of such covenants and restrictions. *Raman Chandler Props. L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.,* 178 S.W.3d 384, 394 (Tex.App.-Fort Worth 2005, pet. denied). Whether a general plan or scheme of development exists is a fact question to be determined from the circumstances. *Ski Masters of Tex., LLC,* 269 S.W.3d at 672.

In their first motion for partial summary judgment, Appellees asserted that the POA derived no authority from

the developer. Exhibit six to that motion is the warranty deed by which Southwest conveyed Lots 253 and 254 to the POA. It provides that:

> GRANTEES herein do mutually agree and bind themselves with other present and future property owners of said BAYWOOD ESTATES, to an individual assessment of TEN and NO/100 ($10.00) Dollars per year for the maintenance of parks and ramp area in said BAYWOOD ESTATES.

The deeds included in the record either contain this restrictive covenant or general language stating that the grantee takes the property subject to all covenants and restrictions. Significantly, the record includes three deeds dated prior to the May 24, 1974 filing of the POA's articles of incorporation. Each of these deeds include this specific restrictive covenant. Thus, the record before us would seem to indicate that Southwest had a general plan or scheme of development for the subdivision regarding upkeep of the park and ramp area. Any authority the developer had could be transferred to the POA. *See Simms v. Lakewood Village Prop. Owners Ass'n, Inc.,* 895 S.W.2d 779, 783 (Tex.App.-Corpus Christi 1995, no writ).

■■■■ It is common knowledge that parks and open spaces add to the desirability and value of lots and are commonly found in many residential subdivisions. *Shields v. Harris Co.,* 248 S.W.2d 510, 512 (Tex.Civ.App.-Fort Worth 1952, writ ref'd n.r.e.). Lots comprising a common area are subject to the restrictive covenants created by the original dedication and restrictions as well as any amendments to them. *Raman Chandler Props.,* 178 S.W.3d at 394. Intent to maintain a common area may be implied from the fact that the benefit of the covenant was intended to be more than of a transitory nature. *See Musgrave,* 990 S.W.2d at 395.

■■■■ A covenant to pay maintenance assessments for the purpose of repairing and improving common areas and recreational facilities can be enforced through a restrictive covenant. *See Inwood North Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex.1987). A developer has the authority to transfer management and ownership of common areas to a property owner's association. *See Simms,* 895 S.W.2d at 783; *see also Selected Lands Corp. v. Speich,* 702 S.W.2d 197, 201 (Tex. App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.) (holding that a developer can transfer the right to collect maintenance fees for a common area to another entity).

Southwest created the benefit to the subdivision lot owners, but it recognized that the park and boat ramp would need to be maintained. The deeds contained in Appellees' chain of title provided that the lot owners would pay for the maintenance. Each of the purchasers of these four lots stated that they "mutually agree and bind themselves with present and future property owners" to the annual assessment. This covenant concerned the subdivision, related to the park and boat ramp, specifically bound the deed grantees and their assigns, was intended to apply to others, and each appellee had notice. *See Musgrave,* 990 S.W.2d at 394–95. Thus, the deeds in our record include a restrictive covenant that runs with the land.

However, Southwest sold 299 lots in the subdivision, and the summary judgment record includes only a few deeds showing the restrictive covenant. There is no other summary judgment evidence establishing that Southwest did or did not have a scheme or plan of development for the entire subdivision. *See Lehmann,* 510 S.W.2d at 680. Accordingly, because Appellees did not show that some lots are not subject to the restriction, they did not show entitlement to summary judgment as

a matter of law. *See* Tex. R. Civ. P. 166a(c); *Ski Masters of Tex., LLC*, 269 S.W.3d at 672; *Cannon*, 190 S.W.2d at 835. Furthermore, the POA did not show that all lots are subject to the restriction and therefore did not show entitlement to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). We sustain the POA's sole issue.

### DISPOSITION

Neither party has shown entitlement to summary judgment as a matter of law. Accordingly, we *reverse* the trial court's summary judgment and *remand* this cause for further proceedings.