**Opinion issued December 17, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00919-CV

————————————

**HONG PHUOC NGO AND DUYEN NGOC DANG, Appellants**

**V.**

**ASSOCIATION OF WOODWIND LAKES HOMEOWNERS, INC., Appellee**

---

**On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2018-38662**

---

## O P I N I O N

The Association of Woodwind Lakes Homeowners, Inc. (HOA) sued two

Woodwind Lakes residents—Hong Phuoc Ngo and Duyen Ngoc Dang (collectively,

the Ngos)—for breach of contract, alleging that they violated the community's deed

restrictions. The Ngos moved to dismiss the suit pursuant to the Texas Citizens

Participation Act (TCPA).[1] The trial court denied their motion. In two issues on appeal, the Ngos argue that the trial court erred in denying their TCPA motion to dismiss because they met their initial burden to establish that the legal action against them is based on, relates to, or is in response to their exercise of the right of free speech or right of association and the HOA failed to meet its burden to establish by clear and specific evidence a prima facie case for each element of its breach-of-contract claim. We affirm the trial court's order denying the Ngos' motion to dismiss.

## Background

The Ngos purchased a house in the Woodwind Lakes subdivision, a deed-restricted community. The deed restrictions are set forth in the subdivision's Declaration of Covenants, Conditions and Restrictions for Woodwind Lakes (the Declaration). All Woodwind Lakes homeowners, including the Ngos, are members of the HOA and are bound by the terms of the Declaration. The Declaration requires the HOA to discharge functions "necessary to the general maintenance of the

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–27.011. The Texas Legislature amended certain provisions of the TCPA in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12, sec. 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010 (to be codified at TEX. CIV. PRAC. & REM. CODE §§ 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010). The amendments became effective September 1, 2019. *Id.* at § 11. Because suit was filed before the effective date of the amendments, this case is governed by the statute as it existed before the amendments. *See id.* All our citations and analyses are to the TCPA as it existed prior to September 1, 2019, unless otherwise noted.

Common Properties" in the community; take action through its board to provide for the "upkeep, development, and aesthetic appearance of the Common Properties and Common Facilities"; and "enforce The Declaration for the common benefit" of its members. Among other things, the Declaration also requires homeowners to submit proposed changes to their homes' exteriors to the HOA's Modifications Committee.

The Ngos submitted a proposal for landscaping to the HOA's Modifications Committee in February 2017.[2] According to the Ngos, proposals are deemed automatically approved under the terms of the Declaration if the committee does not respond to the proposal within the fifteen-day period. After fifteen days passed without a response from the committee, the Ngos began implementing their landscaping plans.

One month after the Ngos submitted their proposal, the HOA sent a deed-restriction-violation letter to the Ngos in which they alleged that the Ngos had failed to comply with the "ARCHITECTURAL REVIEW PROCEDURES AND GUIDELINES: Application Procedures" by their "non-submission of an APPROVED ACC application before starting work on [their] back yard."

The HOA and the Ngos exchanged correspondence about the Ngos' landscaping project as well as the Ngos' other proposed exterior modifications. After

---

[2]    The Ngos submitted additional proposals and plans on March 1, 2017, May 21, 2018, and May 22, 2018 and assert they received no responses to those proposals either.

the parties were unable to resolve their dispute, the HOA sued the Ngos for breach of contract and sought injunctive relief ordering the Ngos to cease violating the deed restrictions and cure the existing violations. The HOA alleged that the Ngos violated the Declaration by making improvements to the exterior of their home without obtaining prior written authorization from the HOA and by failing to remove modifications that violated the deed restrictions.

The Ngos moved to dismiss the suit under the TCPA. The trial court denied their motion, and they appealed.

## The Texas Citizens Participation Act

The Ngos filed their motion to dismiss the HOA's suit under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.001–.011.

Chapter 27 of the Texas Civil Practice & Remedies Code, also known as the Texas Citizens Participation Act, "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). The act is intended "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015).

The purpose of the TCPA, as stated in Civil Practice and Remedies Code chapter 27, "is to 'encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to

4

the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'" *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (quoting TEX. CIV. PRAC. & REM. CODE § 27.002). The TCPA's primary vehicle for accomplishing its stated purpose is a three-step motion-to-dismiss procedure that allows defendants who claim that a plaintiff has filed a suit in response to the defendant's exercise of a constitutionally protected right to seek dismissal of the underlying action, attorney's fees, and sanctions at an early stage in the litigation. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, .005, .009(a); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 469–70 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc).

A defendant who invokes the TCPA's protections by filing a motion to dismiss must show first by a preponderance of the evidence that the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b). When this suit was filed, the TCPA applied if the plaintiff's "legal action is based on, relates to, or is in response to" the movant's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association. *Id.*; *Lipsky*, 460 S.W.3d at 586–87.[3] A "legal action" is "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any

---

[3] Under the amended version of the statute, the TCPA only applies if the legal action is "based on or is in response to" a movant's exercise of a protected right.

other judicial pleading or filing that requests legal or equitable relief." TEX. CIV. PRAC. & REM. CODE § 27.001(6).

If the defendant makes this initial showing, the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element" of his claim. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Lipsky*, 460 S.W.3d at 587. If, however, the plaintiff establishes a prima facie case for its claim, then the burden shifts back to the movant to establish, by a preponderance of the evidence, each essential element of a valid defense to the claim. TEX. CIV. PRAC. & REM. CODE § 27.005(d). A plaintiff can avoid the act's burden-shifting requirements, however, by showing that one of the TCPA's exemptions applies, such as the commercial speech exemption. *See id.* § 27.010(b).

If the trial court grants the motion to dismiss, it must award costs, reasonable attorney's fees, and other expenses of defending against the action "as justice and equity may require." *Id.* § 27.009(a). The trial court also must sanction the plaintiff in an amount "sufficient to deter the party who brought the legal action from bringing similar actions." *Id.*[4]

---

[4]     This portion of the TCPA was amended, effective September 1, 2019. Under the amended version of the TCPA, an award of sanctions is optional, not mandatory.

**A.     Standard of Review**

We review de novo the denial of a TCPA motion to dismiss. *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). To the extent resolution of this appeal turns on construction of the TCPA, we review that de novo as well. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *Gaskamp*, 596 S.W.3d at 470.

In determining whether to grant or deny a motion to dismiss, the court must consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Lipsky*, 460 S.W.3d at 587. In some cases, the relevant evidence may also include live testimony and other documentary evidence. *See Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 707 (Tex. App.—Amarillo 2018, pet. denied); *see generally* TEX. CIV. PRAC. & REM. CODE § 27.006(b) (stating trial court "may allow specified and limited discovery relevant to the motion" to dismiss). We view the pleadings and evidence in the light most favorable to the nonmovant. *Dolcefino*, 540 S.W.3d at 199; *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

**B.     Applicability of the TCPA to the HOA's Breach-of-Contract Claim**

The Ngos argue that the TCPA applies to the HOA's suit because the lawsuit is based on, related to, or in response to the Ngos' exercise of their right of free speech and their right of association.

**1.     Right of Free Speech**

The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). When this suit was filed, a "matter of public concern" included "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7)[5]; *Coleman*, 512 S.W.3d at 899.

---

[5]     The current version of the TCPA, which became effective on September 1, 2019, defines a "matter of public concern" as "a statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public." TEX. CIV. PRAC. & REM. § 27.001(7) (current version). Notably, "environmental, economic, or community well-being" and "a good, product, or service in the marketplace" are no longer defined as a "matter of public concern."

Although "[t]he TCPA casts a wide net," *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018), the statute's scope is not as far reaching as once thought. As the Texas Supreme Court recently explained in *Creative Oil & Gas*, "not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern." 591 S.W.3d at 137. In that case, the lessor of an oil and gas lease sued the lessee in a trespass and trespass-to-try-title action, seeking a ruling that the lease was terminated due to cessation of production. *Id.* at 130. As relevant here, the lessee and the operator filed counterclaims alleging that the lessor had breached the lease and had falsely told third-party purchasers of production from the lease that the lease was expired and that payments on the purchases should stop. *Id.* The lessor moved to dismiss the counterclaims pursuant to the TCPA and argued that its statements to third parties about the lease were an exercise of its right of free speech because these communications were made in connection with matters of public concern, namely, economic well-being.

The supreme court, however, rejected this argument, and held that the lessor's communications with third parties were not covered by the TCPA because they were private business communications regarding a private contract dispute. *Id.* at 134–37. As the court explained, the term "economic well-being" had to be interpreted considering the common meaning of a "matter of public concern," which does not

9

include "purely private matters." *Id.* at 135. Therefore, the court rejected the argument that the communications at issue concerned a matter of public concern, namely, economic well-being, because "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.* at 137.

Relying in part on *Creative Oil & Gas*, an en banc panel of this Court held in *Gaskamp* that communications between former employees that related to the employees' alleged conduct of misappropriating, sharing, and using the plaintiff's trade secrets and conspiring with one another in furtherance of their tortious actions, did not constitute an exercise of their free-speech rights because these communications "had no public relevance beyond the pecuniary interests of the private parties." *Gaskamp*, 596 S.W.3d at 477; *see also Creative Oil & Gas*, 591 S.W.3d at 137 This court also held that communications made by the plaintiff's former employees in soliciting and procuring business from a third party did not constitute an exercise of the employees' free-speech rights because these communications did not have any "relevance to a public audience of buyers or sellers but instead were limited to 'the pecuniary interests of the private parties involved.'" *Gaskamp*, 596 S.W.3d at 479 (quoting *Creative Oil & Gas*, 591 S.W.3d at 136). The supreme court, which acknowledged that it had "previously held that private communications are sometimes covered by the TCPA" in *Coleman* and *Lippincott*,

explained that the communications in those cases were covered by the TCPA only because they "involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved." *Creative Oil & Gas*, 591 S.W.3d at 136 (citing *Coleman*, 512 S.W.3d at 898, 901; *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509–10 (Tex. 2015); *see also Gaskamp*, 596 S.W.3d at 476.

The Ngos argue that the TCPA applies to the HOA's suit because the applications they submitted to the HOA's modifications committee, as well as the correspondence they exchanged regarding their dispute over the improvements they made to their home, are communications that relate directly to matters of "safety," "economic well-being," and "community well-being," as set forth in the Declaration. TEX. CIV. PRAC. & REM. § 27.001(7).[6] Specifically, the HOA alleged that the Ngos violated the Declaration by making improvements to the exterior of their home without obtaining prior written authorization from the HOA and by failing to remove improvements that violate the deed restrictions.

---

[6] The Ngos argue for the first time on appeal that "[t]he HOA itself can also be considered the 'government' for the purposes of the statute," and therefore the communications at issue in this case are protected because they were made in connection with "the government." TEX. CIV. PRAC. & REM. CODE § 27.001(7). We do not need to reach this contention, however, because it was waived by the Ngos' failure to raise it with the trial court. *See* TEX. R. APP. P. 33.1(a) (explaining that, as prerequisite to presenting complaint for appellate review, record must show complaint was made to trial court and trial court ruled or refused to rule); *Baumgart v. Archer*, 581 S.W.3d 819, 826 n.4 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

11

The applications the Ngos submitted to the HOA's modifications committee were contractually required by the Declaration, and the correspondence the Ngos and the HOA exchanged that are related to those applications are attempts by the parties to resolve their ongoing disputes regarding the Ngos' alleged violations of the Declaration. Private communications regarding a private contract dispute are not a matter of public concern. *See Newpark Mats & Integrated Services, LLC v. Cahoon Enterprises, LLC*, 605 S.W.3d 671, 681–82 (Tex. App.—Houston [1st Dist.] Mar. 26, 2020, no pet.) (citing *Creative Oil & Gas*, 591 S.W.3d at 134–37); *cf. Baywood Estates Prop. Owners Ass'n, Inc. v. Caolo*, 392 S.W.3d 776, 782 (Tex. App.—Tyler 2012, no pet.) (stating that restrictive covenant is contractual agreement); *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.) (same).

We further note that the only parties who have a tangible interest in any diminished resale value/property value of the homes in the subdivision caused by the Ngos' breaches of the Declaration are the other homeowners in the subdivision, i.e., other HOA members. The same can be said for any nuisances, annoyances, or disturbances these alleged violations have caused the owners and occupants of the homes in the subdivision located near the Ngos' residence. The pleadings and the record do not reflect any element of public involvement or public interest in this dispute between the HOA and the Ngos. Therefore, none of these matters amount to

a matter of public concern because, as pleaded, this is private contract dispute affecting only the interests of the parties involved—the Ngos, the HOA, and the other HOA members. *See Creative Oil & Gas*, 591 S.W.3d at 137 (stating that "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words"). Notably, the opinions that the Ngos rely upon for the proposition that the TCAP applies in this case were issued before *Creative Oil & Gas* and *Gaskamp* clarified what can be considered a matter of public concern for purposes of the TCPA.[7] *See e.g.*, *Adams*, 547 S.W.3d 890; *Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Garton v. Shiloh Vill. Partners, LLC*, No. 12-16-00286-CV, 2017 WL 6884451 (Tex. App.—Tyler Aug 23, 2017, no pet.) (mem. op.).

Based on the record before us, we conclude that the matters raised by the HOA's lawsuit that arise from the breach of a private contract, the Declaration, are private in nature and have no public relevance beyond the pecuniary interests of the

---

[7] We further note that most of the opinions the Ngos rely upon are also not binding upon this court. *See, e.g.*, *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865 (Tex. App.—Austin 2018, pet. denied); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191 (Tex. App.—Austin 2017, pet. dism'd); *Green v. Port of Call Homeowners Ass'n*, No. 03-18-00264-CV, 2018 WL 4100855 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.); *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155 (Tex. App.—Austin Apr. 7, 2015, no pet.) (mem. op.).

Ngos, the HOA, and the other HOA members. *See Creative Oil & Gas*, 591 S.W.3d at 136. Therefore, we conclude that the Ngos did not meet their burden of showing, by a preponderance of the evidence, that the HOA's suit was based on, relates to, or is in response to the Ngos' exercise of their right to free speech. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1).

Having done so, we next decide whether the Ngos met their burden to show that the HOA's suit is "based on, relates to, or is in response" to an exercise of the Ngos' right of freedom of association.

## 2. Right of Association

At the time to this suit was filed, the TCPA defined the "[e]xercise of the right of association" as a "communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2).

An en banc panel of this court held in *Gaskamp* that the right of association "with respect to the pre-amendment version of the TCPA, the proper definition of 'common' in the phrase 'common interests' is 'of or relating to a community at large: public.'" 596 S.W.3d at 476. Relying upon this interpretation, this court held that the defendants did not meet their burden of showing by a preponderance of the evidence that the suit was based on, related to, or was in response to an exercise of their right of association because the conduct and communications at issue, which involved misappropriating plaintiff's trade secrets and conspiring to commit related torts,

14

"benefitted only the five alleged tortfeasors" and there were no "allegations that the tortfeasors 'join[ed] together to collectively express, promote, pursue, or defend' any public or community interests." *Id.*

Relying upon *Gaskamp*, a panel of this court recently held that communications made between private parties regarding an investigation into possible overbilling in violation of a private contract were not protected communications because there was no indication in the record that the investigation of the billing practices "involved any manner of public or citizen participation." *Newpark Mats*, 605 S.W.3d at 679–80. We explained that these communications involved "a private contract dispute between two private parties and the only party who would benefit from this investigation is [the plaintiff], and possibly the customers [the plaintiff] had overbilled." *Id.* at 680.

The Ngos argue that there are two exercises of associational rights at issue in this case, namely, their right to "join together" with the other HOA members: (1) "in furtherance of their common interest to preserve and advance the welfare of the neighborhood in which they live;" and (2) "to promote, pursue, or defend their common interests of enjoying the free use of their property." According to the Ngos, the written applications they submitted to the HOA's Modifications Committee and the related correspondence are protected "communications" between them and other HOA members. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(2) (defining "[e]xercise

15

of the right of association" as "communication between individuals who join together to collectively express, promote, pursue, or defend common interests").

The Declaration is a private contract between private parties intended to protect the parties' financial interests in their respective properties, including the common properties shared by all the HOA members. There is no indication in the record that the Ngos and other HOA members' shared interests in "preserv[ing] and advanc[ing] the welfare of the neighborhood in which they live" or "enjoying the free use of their [private] property," involve any manner of public or citizen participation. *See Newpark Mats*, 605 S.W.3d at 680; *see also Gaskamp*, 596 S.W.3d at 476. Indeed, the petition is not based on the Ngos joining "together" with the HOA or other HOA members. On the contrary, the basis of the petition is that the Ngos have violated the Declaration and are in direct conflict with the HOA.

The opinions that the Ngos rely upon were issued before *Gaskamp* and *Newpark Mats* and/or are factually distinguishable.[8] For example, unlike in the supreme court's opinion in *Adams*, there are no allegations of malfeasance or criminality by any party involved in this case. *See Adams*, 547 S.W.3d at 893 (business disparagement suit based on blog posts and emails in which homeowner

---

[8] We further note that the other opinions that the Ngos rely upon are not binding upon this court. *See, e.g.*, *Grant*, 556 S.W.3d 865; *Elite Auto Body LLC*, 520 S.W.3d 191; *Green*, 2018 WL 4100855; *Abatecola*, 2018 WL 3118601; *Neyland*, 2015 WL 1612155.

implied that prior owner of neighborhood developer is felon, developer engaged in illegal or improper business practices, homeowner's association was being controlled by alleged felon, and homeowner's association had been cutting down trees without city permits and violated city ordinances). Here, the record and the pleadings reflect that the Ngos' dispute with the HOA is essentially a contract dispute. This court's opinion in *Fawcett v. Rogers*, 492 S.W.3d 18, 24 (Tex. App.—Houston [1st Dist.] 2016, no pet.), which was issued prior to the en banc court's opinion in *Gaskamp*, was based on the presumption that a "common interest" does not require any degree of public involvement—reasoning that *Gaskamp* implicitly disavowed. *See Gaskamp*, 596 S.W.3d at 476 (holding "common interest" means "of or relating to a community at large: public," and concluding that movants had not met their burden to prove that suit "was based on, relates to, or is in response to an exercise of their right of association" because there were "no allegations that the tortfeasors 'join[ed] together to collectively express, promote, pursue, or defend' any public or community interests," as opposed to private interest shared only between tortfeasors).

Based on the record before us, we conclude that the Ngos did not meet their burden of showing, by a preponderance of the evidence, that the HOA's suit was based on, relates to, or is in response to the Ngos' exercise of their right of association as that term is used in the TCPA. *See* TEX. CIV. PRAC. & REM. CODE

17

§ 27.005(b)(3). The trial court did not err by denying the Ngos' motion to dismiss pursuant to the TCPA because the Ngos did not establish that the TCPA applied.

We overrule the Ngos' first issue.[9]

## Conclusion

We affirm the trial court's interlocutory order denying the Ngos' motion to dismiss.

Russell Lloyd
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

Landau, J., dissenting.

---

[9] Having determined that the Ngos did not meet their initial burden to establish the application of the TCPA, we do not need to address the issue presented in the Ngos' second issue—whether the HOA established by clear and specific evidence a prima facie case for each element of its breach-of-contract claim.

18